IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3007-FL

| ANTHONY P. MILLS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| YVONNIE LOCKLEAR, | ) | |
| | ) | |
| Defendant. | ) | |

The matter comes before the court on defendant's motion to dismiss (DE 52) pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was fully briefed. Also before the court are plaintiff's unopposed motions for default judgment (DE 56, 61). In this posture, the issues raised are ripe for adjudication. For the following reasons, the court denies plaintiff's motions for default judgment and denies defendant's motion to dismiss; however, the court dismisses plaintiff's mail-related claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

**STATEMENT OF THE CASE**

Plaintiff, a state inmate, initially brought this action pursuant to 42 U.S.C. § 1983 against defendant, who is the head nurse at Lumberton Correctional Institution ("Lumberton"), in addition to multiple previously dismissed defendants, specifically Lumberton, North Carolina Department of Public Safety ("DPS"), Secretary Alvin Keller ("Keller"), DPS Director Robert Lewis ("Lewis"), supervisor of the Lumberton medical department Ms. Nichols ("Nichols"), DPS Director of Medical Services Dr. Paula Smith ("Smith"), Lumberton Assistant Superintendent Paul Taylor ("Taylor"),

Lumberton Superintendent Sandra Thomas ("Thomas"), and John Does 1-100.[1] Plaintiff then filed two motions to amend in which he provided the identities for several of the John Doe defendants. On June 22, 2012, the court issued an order granting plaintiff's motions to amend. Upon conducting a frivolity review of plaintiff's complaint and amended complaint, the court determined that plaintiff's allegations were difficult to follow and directed him to particularize his complaint.

On November 7, 2012, plaintiff responded to the court's June 22, 2012, order to particularize, and alleged that defendant and previously-dismissed defendants Thomas, Taylor, Nichols, Smith, Keller, and Lewis acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

Plaintiff then filed two motions to compel, two motions for entry of default, and a motion for leave to file an amended complaint. In his amended complaint, plaintiff identified John Does 1-100 as defendants Edward Currie ("Currie"), Finesse G. Couch ("Couch"), Lucien Capone, III ("Capone"), Harold L. Pollock ("Pollock"), Matthew Rouse, Jr. ("Rousse"), and Roger Smith, Jr. ("Smith"). Plaintiff simultaneously moved to voluntarily dismiss the newly identified John Doe defendants because it no longer was feasible for him to proceed against these defendants.

On March 20, 2013, the court entered an order construing plaintiff's motion to amend as a motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), and dismissed Currie, Couch, Capone, Pollock, Rouse, and Smith from this action without prejudice. The court also conducted a frivolity review of plaintiff's particularized complaint and dismissed plaintiff's supervisor liability claims against Thomas, Taylor, Nichols, Smith, Lewis, and Keller. The court allowed plaintiff to proceed with the following four claims against defendant: (1) denial of

---

[1] The court has constructively amended the caption to reflect subsequent dismissal of all other defendants in this case.

plaintiff's anticoagulation medication; (2) interference with plaintiff's mail; (3) refusal to monitor plaintiff's anticoagulation; and (4) refusal to treat plaintiff's chronic leg pain and swelling.[2] Finally, the court in its March 20, 2013, order denied plaintiff's motions for entry of default and motion to compel discovery.

On September 24, 2013, defendant filed her motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted, which was fully briefed. Plaintiff additionally filed two motions for entry of default judgment.

## STATEMENT OF THE FACTS

The facts seen in the light most favorable to plaintiff are as follows. Plaintiff suffered a deep vein thrombosis in the late 1990's, and was treated with an inferior vena cava ("IVC") filter. ((DE 1), Ex. A.) Plaintiff subsequently was not consistent with anticoagulation and developed a clot in his IVC, which resulted in "venous insufficiency of the lower extremities with a lot of chronic swelling and pain." (Id.) Plaintiff thereafter was treated by Dr. Richard S. Foulke ("Dr. Foulke"), who maintained plaintiff on anticoagulation medication from 2003 through 2009. (Id.) Plaintiff entered the North Carolina Department of Public Safety's custody on February 24, 2010. www.doc.state.nc.us.

Beginning in July 2010, defendant denied plaintiff blood thinner medication for a couple of months. (Am. Compl. (DE 16), pp. 9-12 and Exs. C-J.) Plaintiff states that the denial of his anticoagulation medication caused "worse damage to his lower legs." ((DE 16), p. 4.)

---

[2] Plaintiff's pleadings are not a model of clarity. The court in its March 20, 2013, order construed plaintiff's allegations to state that defendant acted with deliberate indifference to his serious medical needs because she refused to treat him for his chronic pain and swelling in his lower legs, which resulted in the need for surgical intervention. Upon a further review of the record and plaintiff's subsequent filings, the court construes plaintiff's claims as the four set forth above.

3

On January 4, 2011, defendant received a package from Dr. Foulke, which was addressed to plaintiff and marked as legal mail. ((DE 16), p. 7.) Defendant then gave plaintiff his opened legal mail on January 12, 2011. (Id.) Plaintiff asked defendant why his legal mail was opened outside of his presence, and defendant replied that she had received the mail in that condition. (Id.) After opening the package, plaintiff discovered that documents were missing. (Id.) Plaintiff then wrote to Dr. Foulke and obtained copies of the missing documents. (Id. p. 8.)

On August 1, 2011, DPS medical staff scheduled plaintiff for hip replacement surgery. (Id. p. 9.) Defendant knew that plaintiff was scheduled for surgery, but did not put "a stop-or-hold order on plaintiff's blood thinner coumadin." (Id.) "When [plaintiff] was cleared for surgery[, his blood] levels were 1.9 on 6-24-11. From 6-24-11 [un]til Day of surgery which was suppose to be 8-1-11. There is [an] almost six week gap in between blood work being done on 8-1-11[.] Plaintiff's Warfarin level was almost a 5." (Id. pp. 9-10.) Plaintiff states that defendant refused to monitor plaintiff's warfarin levels every three to four weeks as directed by Dr. Foulke, which resulted in a delay in his scheduled hip replacement surgery. (Id. p. 10.)

Because defendant ignored plaintiff's requests for medical assistance and acted with deliberate indifference to his medical needs, plaintiff has "suffered worse damage to his lower legs. Plaintiff's legs are almost black because of the venous insufficiency. . . . Plaintiff has also suffered because of denying of pain medication." (Id. p. 4.) Plaintiff additionally states that he "continues to suffer due to the chronic swelling and pain in both lower extremities." (Id.)

**DISCUSSION**

A.  Motions for Entry of Default

Plaintiff filed two motions for entry of default. Defendant was served on August 12, 2013, and her answer was due by September 2, 2013. The court thereafter allowed defendant an extension of time, until October 2, 2013, to respond to plaintiff's complaint. Defendant filed her motion to dismiss on September 24, 2013. Because defendant timely responded to plaintiff's complaint by filing a motion to dismiss, plaintiff's motions for entry of default are DENIED. See Myrick v. United States, No. 13-2205, 2014 WL 890185, at *1 (4th Cir. Mar. 7, 2014) ("The district court did not err in denying Myrick's motions for default judgment because the United States' timely filing of a motion to dismiss suspended its obligation to file an answer.")

B.  Motion to Dismiss

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations

omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotations omitted).

2. Analysis

Plaintiff alleges that defendant acted with deliberate indifference to his medical needs because she refused to provide plaintiff with his prescribed anticoagulation medication, failed to monitor his condition, and refused to address his chronic pain and swelling. In response, defendant raises the affirmative defense of qualified immunity against plaintiff's § 1983 action.

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff alleged an Eighth Amendment violation.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner

6

must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

The court begins with the objective prong of the Eighth Amendment test. Allegations, such as those before the court, that a defendant's activities resulted in chronic pain state an Eighth Amendment claim. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (stating that a serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (internal quotation marks omitted); see, e .g., Brock v. Wright, 315 F.3d 158, 163 (2nd Cir. 2003) ( "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such a pain."); McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) ("[P]rison officials may violate the Eighth Amendment by failing to treat an inmate's pain."). Thus, for the purposes of this motion, plaintiff satisfies the objective prong of the Eighth Amendment test.

The court next turns to the second prong of the Eighth Amendment test–whether defendant acted with deliberate indifference to plaintiff's medical needs. Plaintiff's allegations that defendant refused to provide plaintiff with his prescribed anticoagulation medication, failed to monitor his condition, and refused to address his chronic pain and swelling states an Eighth Amendment claim. See Estelle v. Gamble, 429 U.S. 97, 105 (1976) (finding that deliberate indifference to an inmate's illness states a cause of action pursuant to § 1983 whether the "indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfereing with the treatment once prescribed"); Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (ruling that an inmate stated an Eighth

7

Amendment claim against a prison nurse who allegedly tore up the paperwork which caused the plaintiff to be denied a prescribed medication for fifteen days). Because the current record is insufficient to make a determination as to the issue of qualified immunity at this time, defendant's motion to dismiss is DENIED.

C.     Frivolity Review

The court next conducts a review, pursuant to 28 U.S.C. § 1915(e)(2)(B), of plaintiff's claim that defendant tampered with his legal mail from Dr. Foulke in violation of the First Amendment to the United States Constitution. The Prison Litigation Reform Act directs the court to dismiss a prisoner's complaint *sua sponte* at any time "if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)(ii). A complaint may be found frivolous because of either legal or factual deficiencies. First, a complaint is frivolous where "it lacks an arguable basis . . . in law." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Second, a complaint may be frivolous where it "lacks an arguable basis . . . in fact." Id. at 325. Legally frivolous claims are based on an "indisputably meritless legal theory" and include "claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (quoting Neitzke, 490 U.S. at 327).

Plaintiff contends that defendant opened plaintiff's mail from Foulke and removed a portion of its contents before passing it along to plaintiff. However, at most, plaintiff's allegations amount to nothing more than an isolated incident of mail mishandling. Isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir.1983) (finding isolated incidents of opening of legal mail do not state a cognizable § 1983 claim); Davis v. Goord, 320 F.3d 346, 351 (2d Cir.2003) (noting that "an isolated incident

8

of mail tampering is usually insufficient to establish a constitutional violation."). Thus, because plaintiff's allegations do not arise to a First Amendment violation,[3] the court DISMISSES this claim.

## CONCLUSION

In summary, Locklear's motion to dismiss (DE 52) is DENIED. Plaintiff's motions for entry of default (DE 56, 61) also are DENIED; however, plaintiff's claims regarding alleged tampering with his legal mail are DISMISSED as frivolous. The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this the 20th day of August, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[3] The dismissal of plaintiff's First Amendment mail-related claim does not preclude plaintiff from discussing defendant's alleged mail mishandling in the context of plaintiff's Eighth Amendment claim.